UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

HECTOR BRUNO,

     Plaintiff,

v.                                    Case No. 3:18cv1390-MCR-HTC

UNITED STATES OF
AMERICA, et al.,

     Defendants.
_____/

REPORT AND RECOMMENDATION

This matter is before the Court on Defendant Lieutenant R. Boston's Motion

to Dismiss (ECF Doc. 45) and Plaintiff's response in opposition (ECF Doc. 49). The

matter has been referred to the undersigned Magistrate Judge for a Report and

Recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(C). After

reviewing the parties' submissions and the relevant law, the undersigned

recommends that Boston's Motion to Dismiss be GRANTED and Plaintiff's claims

against Boston be DISMISSED WITH PREJUDICE.

     I.     Background

Plaintiff is a former inmate of the Bureau of Prisons ("BOP"). His complaint

names two Defendants: United States of America ("USA") and Boston, a

correctional officer previously employed at the Federal Prison Camp in Pensacola,

Florida ("FPC Pensacola").[1]  Plaintiff alleges Defendants were negligent under

Florida law,[2] and that they are liable for violations of the First, Fourth and Eighth

Amendments.  Plaintiff's claims arise out of a single report of illness that occurred

in 2017 while he was incarcerated at FPC Pensacola and the Defendants' response

thereto.  As relief, Plaintiff seeks monetary damages.

Plaintiff's verified complaint sets forth the factual allegations that follow, the

truth of which are accepted for purposes of this Report and Recommendation.  On

September 11, 2017, Plaintiff told officials at FPC Pensacola he was ill and needed

medical treatment.  Plaintiff claims he "was experiencing respiratory distress, high

fever, nausea and vomiting, and physical weakness."  The officials told Plaintiff "the

[l]ieutenant on duty would come to check on him in his living quarters[,]" but the

lieutenant did not do so.  Plaintiff does not contend that the lieutenant on duty was

Defendant Boston.

Plaintiff says his symptoms worsened the following morning.  He reported to

sick call at 6:00 a.m., but "a notice was posted advising inmates that 'Sick Call' for

that day was scheduled for 8:00 a.m. for all non-emergency matters."  "Although the

notice indicated that an 'emergency' Sick Call was available to inmates, there was

---

[1] Only Defendant Boston has moved for dismissal.

[2] Plaintiff asserts Defendant USA is liable under the Federal Tort Claims Act ("FTCA") for the negligence of Defendant Boston and other BOP employees.

no officer or staff member present to receive a request for emergency Sick Call or to address Plaintiff's emergent health concerns."

Plaintiff returned to his living quarters to rest until the 8:00 a.m. sick call.  At approximately 6:40 a.m., an inmate woke Plaintiff and advised him "that his name was being called to the 'bus barn' to report for work."  Plaintiff went to the bus barn; he told Defendant Boston "he was ill and unable to report to work, and . . . he needed immediate medical attention and . . . was waiting for Health Services to open at 8:00 a.m."   Plaintiff claims that "[d]espite Plaintiff's obvious weakened physical condition, Lt. Boston ignored Plaintiff's health concerns and attempted to force Plaintiff to board the inmate work bus and be transported to his work site."  Boston "insisted that Plaintiff go to work for the day, and after the full work day, go to the next available Sick Call[.]"

Plaintiff did not end up going to work.  Instead, Boston asked another officer to escort Plaintiff to Boston's office.  Then, he was "ordered to change clothing and placed in a cell for over a half-hour, during which time no medical treatment was provided[.]"  Plaintiff was subsequently handcuffed and transported to the Santa Rosa County Jail, which took one and a half hours.  After arriving at the jail, Plaintiff requested and received medical treatment.  There, he was diagnosed and treated for "right perihilar mid and lower lobe pneumonia."

Boston filed an incident report charging Plaintiff with refusing to work and refusing to obey an order. Plaintiff contested the incident report and submitted grievances regarding Boston and FPC Pensacola. After leaving the Santa Rosa County Jail, Plaintiff was transferred to five (5) different prisons within six (6) months; Plaintiff claims the transfers were retaliation for complaining about his treatment at FPC Pensacola. Subsequently, the September 12, 2017, incident report "was dismissed and expunged from [Plaintiff's] prison record."

II.    Legal Standard

In considering a motion to dismiss for failure to state a claim, the Court reads Plaintiff's *pro se* allegations in a liberal fashion, *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972), and accepts "[a]ll well-pleaded facts in plaintiff's complaint and all reasonable inferences drawn from those facts . . . as true." *McGinley v. Houston*, 361 F.3d 1328, 1330 (11th Cir. 2004) (citation omitted). As the Supreme Court reiterated in *Ashcroft v. Iqbal*, although Rule 8 of the Federal Rules of Civil Procedure does not require detailed factual allegations, it does demand "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." 556 U.S. 662, 678 (2009). A complaint must state a plausible claim for relief, and "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

III.    Discussion

      A.    Florida Law

To the extent Plaintiff seeks to bring state-law claims against Defendant Boston individually, those claims are barred by the Westfall Act.  "When a federal employee is sued for a wrongful or negligent act, the Federal Employees Liability Reform and Tort Compensation Act of 1988 (commonly known as the Westfall Act) empowers the Attorney General to certify that the employee 'was acting within the scope of [her] office or employment at the time of the incident out of which the claim arose.'"  *Gutierrez de Martinez v. Lamagno*, 515 U.S. 417, 419-20 (1995) (quoting 28 U.S.C. § 2679(d)(1)).  "Upon certification, the employee is dismissed from the action and the United States is substituted as defendant.  The case then falls under the governance of the [FTCA.]"  *Id.* at 420.

The Attorney General, acting through the U.S. Attorney for the Northern District of Florida, has certified that Boston was acting within the scope of her employment with the BOP with respect to Plaintiff's allegations.  ECF Doc. 45-1. Plaintiff does not contest the certification in his response to Boston's Motion to Dismiss.   Plaintiff, therefore, cannot bring state-law claims against Boston; Plaintiff's claims under Florida law can proceed only against Defendant USA.  *See Springer v. Bryant*, 897 F.2d 1085, 1086 (11th Cir. 1990) ("The purpose of the

FELRTCA is to create absolute immunity for federal employees who, within the scope of their employment, commit common law torts.") (citation omitted).

>      B.      *Bivens*

Defendant Boston argues Plaintiff's First and Fourth Amendment claims are not cognizable under *Bivens*. ECF Doc. 45 at 5-10. In *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388 (1971), the Supreme Court "recognized for the first time an implied private action for damages against federal officers alleged to have violated a citizen's constitutional rights." *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 66 (2001). The Supreme Court, however, has since "rejected the claim that a *Bivens* remedy should be implied simply for want of any other means for challenging a constitutional deprivation in federal court." *Id.* at 69. Indeed, the Supreme Court has recognized a *Bivens* remedy in only three contexts: (1) a Fourth Amendment claim against federal agents for handcuffing a man in his home without a warrant, *Bivens, supra*; (2) a Fifth Amendment equal protection claim against a Congressman for gender-based employment discrimination, *Davis v. Passman*, 442 U.S. 228 (1979); and (3) an Eighth Amendment claim against federal prison officials for failing to adequately treat an inmate's asthma, *Carlson v. Green*, 446 U.S. 14 (1980).

When determining whether a *Bivens* claim may proceed, courts must first consider whether the claim extends *Bivens* to a new context. If a case differs in a meaningful way from previous *Bivens* cases decided by the Supreme Court, the

context is new. *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1859 (2017). "A case might differ in a meaningful way because of the rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or the presence of potential special factors that previous *Bivens* cases did not consider." *Id.* at 1860.

If the claim would extend *Bivens* to a new context, courts must conduct a "special factors" analysis. Supreme Court precedent makes it "clear that a *Bivens* remedy will not be available if there are 'special factors counselling hesitation in the absence of affirmative action by Congress.'" *Id.* at 1857 (quoting *Carlson*, 446 U.S. at 18). "[T]he inquiry must concentrate on whether the Judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed." *Id.* at 1857-58. "[T]he decision to recognize a damages remedy requires an assessment of its impact on governmental operations systemwide[,]" including "the burdens on Government employees who are sued personally, as well as the projected costs and consequences to the Government itself when the tort and monetary liability mechanisms of the

legal system are used to bring about the proper formulation and implementation of public policies." *Id.* at 1858.

Here, Plaintiff's First Amendment retaliation claim clearly presents a new *Bivens* context because the constitutional right at issue differs from those in *Bivens* (Fourth Amendment), *Passman* (Fifth Amendment) and *Carlson* (Eighth Amendment). *See Andrews v. Miner*, 301 F. Supp. 3d 1128, 1133 (N.D. Ala. 2017) (holding prisoner's First Amendment retaliation claim "presents a new *Bivens* context under Supreme Court jurisprudence" and noting "[t]he most significant difference from prior Supreme Court cases recognizing a *Bivens* right of action is the constitutional right at issue"); *see also Recihle v. Howards*, 566 U.S. 658, 663 n.4 (2012) ("We have never held that *Bivens* extends to First Amendment claims.") (citations omitted).

Additionally, although *Bivens* itself involved an alleged violation of the Fourth Amendment, Plaintiff's Fourth Amendment claim presents a new *Bivens* context because he is suing a federal correctional officer for events that occurred in prison. As Defendant Boston correctly notes, "the Fourth Amendment violation in *Bivens* arose out of FBI agents handcuffing a man in his own home without a warrant, an event completely distinguishable from [correctional officers] detaining, searching, and seizing a convicted federal inmate." ECF Doc. 45 at 7-8. The Supreme Court has recognized that suits against different types of defendants can

provide the "meaningful" distinction described in *Ziglar*.  *Compare Carlson, supra*

(approving *Bivens* action under the Eighth Amendment against federal prison

officials for failing to provide adequate medical treatment) *and Passman, supra*

(approving *Bivens* action against Congressman for employment discrimination) *with*

*Malesko, supra* (rejecting *Bivens* action under the Eighth Amendment against

private corporate prison operator for failing to provide adequate medical treatment)

*and Chappell v. Wallace*, 462 U.S. 296 (1983) (rejecting *Bivens* action against

military officers for employment discrimination).

Furthermore, extending a *Bivens* remedy to Fourth Amendment claims based

on the "seizure" of a prisoner could be disruptive to prison administration, and courts

must show deference to prison officials.  *See Davila v. Gladden*, 777 F.3d 1198,

1206 (11ᵗʰ Cir. 2015) ("We are quite mindful that for prisons, we must afford due

deference to the experience and expertise of prison and jail administrators in

establishing necessary regulations and procedures to maintain good order, security

and discipline, consistent with consideration of costs and limited resources.")

(citation and quotation omitted).  Such considerations are not present in *Bivens,* as

that case involved federal agents detaining a man in his home.  *See Ziglar*, 137 S.

Ct. at 1860 ("A case might differ in a meaningful way because of . . . the risk of

disruptive intrusion by the Judiciary into the functioning of other branches[.]").

Thus, Plaintiff's Fourth Amendment claim presents a new *Bivens* context.  *See id.* at

1864 (Even if a "case has significant parallels to one of the [Supreme] Court's previous *Bivens* cases," "a modest extension is still an extension.").

Turning to the "special factors" analysis, several such factors counsel against creating a *Bivens* remedy for Plaintiff's First and Fourth Amendment claims.  First, alternative remedies were available to Plaintiff.  *See id.* at 1858 ("[I]f there is an alternative remedial structure present in a certain case, that alone may limit the power of the Judiciary to infer a new *Bivens* cause of action.").  Plaintiff could pursue relief through the BOP's grievance process (which he did) and could file an action for injunctive relief.  *See Pinkney v. Lockett*, Case No. 5:16-cv-00103-Oc-02PRL, 2019 WL 1254851, at *5-7 (M.D. Fla. Mar. 19, 2019) (holding *Bivens* did not extend to federal inmate's First Amendment retaliation claim; noting "Plaintiff arguably had alternative remedies available to him in the form of a suit for injunctive relief and the BOP grievance process").

Second, Congress has declined to provide federal prisoners with a damages remedy.  *See Ziglar*, 137 S. Ct. at 1865 ("[L]egislative action suggesting that Congress does not want a damages remedy is itself a factor counseling hesitation.").  When "Congress passed the Prison Litigation Reform Act of 1995, which made comprehensive changes to the way prisoner abuse claims must be brought in federal court[,]" it "had specific occasion to consider the matter of prisoner abuse and to consider the proper way to remedy those wrongs[,]" but "the Act itself does not

provide for a standalone damages remedy against federal jailers.  It could be argued

that this suggests Congress chose not to extend the *Carlson* damages remedy to cases

involving other types of prisoner mistreatment." *Id.*  Congress's refusal to enact a

damages remedy for federal prisoners counsels against the Court implying one here.

Finally, the nature of Plaintiff's First and Fourth Amendment claims make the

undersigned hesitant to imply a *Bivens* remedy.  "Recognizing a *Bivens* remedy for

First Amendment retaliation claims could lead to the unwanted result of inmates

filing grievances against correctional officers and then claiming that any negative

action that followed was a result of retaliatory animus. . . . The costs of such actions

would be high." *Pinkney*, 2019 WL 1254851, at *7 (citations omitted).  Likewise,

with respect to Plaintiff's Fourth Amendment claim, "[w]hether to place an inmate

in more restrictive detention involves real-time and often difficult judgment calls

about disciplining inmates, maintaining order, and promoting prison officials' safety

and security[,]" which "strongly counsels restraint[.]" *Bistrian v. Levi*, 912 F.3d 79,

96 (3rd Cir. 2018) (citation omitted).

Accordingly, the undersigned concludes *Bivens* should not be extended to

Plaintiff's First and Fourth Amendment claims.[3]  *See Ziglar*, 137 S. Ct. at 1857

(noting "expanding the *Bivens* remedy is now a 'disfavored' judicial activity" and

---

[3] Plaintiff cited caselaw regarding the extension of *Bivens* to different contexts (ECF Doc. 49 at 4-5) but offers no substantive argument as to why *Bivens* should extend to the First and Fourth Amendment claims he raises against Defendant Boston.

Case No. 3:18cv1390-MCR-HTC

the Supreme Court "has consistently refused to extend *Bivens* to any new context or new category of defendants.") (citations omitted).

> C.     Failure to State a Claim

Even assuming Plaintiff's First and Fourth Amendment claims are cognizable under *Bivens*, the claims are still subject to dismissal. To prevail on a First Amendment retaliation claim, a plaintiff must establish: "(1) his speech was constitutionally protected; (2) the inmate suffered adverse action such that the administrator's allegedly retaliatory conduct would likely deter a person of ordinary firmness from engaging in such speech; and (3) there is a causal relationship between the retaliatory action and the protected speech." *Smith v. Mosley*, 532 F.3d 1270, 1276 (11th Cir. 2008).

Here, Plaintiff alleges he was transferred to multiple prisons as retaliation for complaining about his treatment at FPC Pensacola. Plaintiff, however, has not established a connection between Defendant Boston and the alleged retaliation. First, Plaintiff does not allege Boston knew about his grievances. *See Farrow v. West*, 320 F.3d 1235, 1248-49 (11th Cir. 2003) (affirming grant of summary judgment on retaliation claim when alleged retaliator attested in affidavit that she had no knowledge of an inmate's protected speech). More importantly, Plaintiff does not allege Boston ordered, or even had the authority to order, his subsequent

transfers between prisons.   Thus, Plaintiff has not stated a First Amendment

retaliation claim against Boston.[4]

Likewise, Plaintiff has failed to state a Fourth Amendment claim against

Boston.  The basis for the Fourth Amendment claim is that Plaintiff was handcuffed

and transported to the Santa Rosa County Jail "without cause or justification for such

detention as per BOP policy."  ECF Doc. 1 at 5.  Such an allegation does not

constitute a violation of the Fourth Amendment.  Prisoners have "no constitutionally

protected liberty interest in being classified at a certain security level or housed in a

certain prison[,]" *Kramer v. Donald*, 286 F. App'x 674, 676 (11th Cir. 2008), and

handcuffing a prisoner for transportation to a different detention facility is not

unreasonable. *See Riley v. California*, 573 U.S. 373, 381 (2014) ("As the text makes

clear, the ultimate touchstone of the Fourth Amendment is reasonableness.")

(citation and quotation omitted).

Prisoners simply are not afforded the full panoply of protections that the

Fourth Amendment provides to nonprisoners. *See Hudson v. Palmer*, 468 U.S. 517,

526 (1984) (holding "the Fourth Amendment proscription against unreasonable

---

[4] Plaintiff also makes the conclusory allegation that the multiple prison transfers violated "Plaintiff's constitutional right of access to the courts." ECF Doc. 1 at 9.  Plaintiff has not stated a First Amendment access to the courts claim because he has not alleged facts indicating Boston impeded his pursuit of a nonfrivolous, post-conviction claim or civil rights action. *See Wilson v. Blankenship*, 163 F.3d 1284, 1290 (11th Cir. 1998); *see also Christopher v. Harbury*, 536 U.S. 403, 415 (2002) ("[T]he underlying cause of action, whether anticipated or lost, is an element that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation.").

searches does not apply within the confines of the prison cell"); *id.* at 524 ("The curtailment of certain rights is necessary, as a practical matter, to accommodate a myriad of 'institutional needs and objectives' of prison facilities, . . . chief among which is internal security . . . .") (citations omitted). In addition, a failure by prison officials to adhere to BOP policy does not rise to the level of a constitutional violation. *See Sandin v. Conner*, 515 U.S. 472, 481-82 (1995) (prison regulations are not intended to confer rights or benefits on inmates but are merely designed to guide correctional officials in the administration of prisons). Plaintiff's Fourth Amendment claim, therefore, should be dismissed.

Plaintiff's Eighth Amendment deprivation of medical care claim against Boston should also be dismissed. An Eighth Amendment claim may arise when prison officials act with deliberate indifference to an inmate's serious medical needs. *See Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976); *see also Harris v. Thigpen*, 941 F.2d 1495, 1504 (11th Cir. 1991) ("Federal and state governments . . . have a constitutional obligation to provide minimally adequate medical care to those whom they are punishing by incarceration.").

To establish deliberate indifference, a plaintiff "must show: (1) a serious medical need; (2) the defendants' deliberate indifference to that need; and (3) causation between that indifference and the plaintiff's injury." *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1306-07 (11th Cir. 2009) (citation omitted). A serious medical

need is "one that, if left unattended, poses a substantial risk of serious harm." *Id.* at

1307 (quoting *Farrow*, 320 F.3d at 1243). For an actor to be found to have acted

with deliberate indifference to that need, a plaintiff must prove: "(1) subjective

knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is

more than gross negligence." *Goodman v. Kimbrough*, 718 F.3d 1325, 1331-32 (11th

Cir. 2013) (quoting *Townsend v. Jefferson Cty.*, 601 F.3d 1152, 1158 (11th Cir.

2010)). For an actor to have subjective knowledge, "the official must both be aware

of facts from which the inference could be drawn that a substantial risk of serious

harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S.

825, 837 (1994). Negligent conduct does not rise to the level of deliberate

indifference. *See Taylor v. Adams*, 221 F.3d 1254, 1258 (11th Cir. 2000) (The

official's response must have been so inadequate as to "constitute an unnecessary

and wanton infliction of pain" and not "merely accidental inadequacy, negligence in

diagnosis or treatment, or even medical malpractice actionable under state law.").

Here, Plaintiff's factual allegations against Defendant Boston, at most, sound

in negligence. Plaintiff alleges he told Boston he was ill, unable to work and needed

medical attention. In response, Boston directed Plaintiff to go to work and then make

the next available sick call. Although Plaintiff alleges he suffered from a "weakened

physical condition," which was "obvious," such an allegation is conclusory and

cannot be accepted as true. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)

(mere "labels and conclusions" are not accepted as true) (citing *Papasan v. Allain*,
478 U.S. 265, 286 (1986)) (noting courts "are not bound to accept as true a legal
conclusion couched as a factual allegation")).  Plaintiff does not allege he exhibited
any physical manifestations of an illness, much less of pneumonia, when he told
Defendant Boston he was sick.[5]  Indeed, although Plaintiff states that when he woke
up he had a fever and was vomiting, there is no indication that Boston witnessed
those symptoms during her interaction with him.  Instead, he alleges that he tried to
"explain" his symptoms to her.  ECF Doc. 1 at 4.  Thus, Boston's failure to credit
Plaintiff's subjective complaints or immediately refer him for treatment after this
single encounter was, at most, negligent.  *Farmer*, 511 U.S. at 838 ("[A]n official's
failure to alleviate a significant risk that [she] should have perceived but did not,
while no cause for commendation, cannot under our cases be condemned as the
infliction of punishment.").   Indeed, Plaintiff characterizes Boston's actions as
negligent at one point in the complaint.  ECF Doc. 1 at 8.

Furthermore, even if Plaintiff had alleged facts sufficient to show that Boston
acted with deliberate indifference toward his medical needs, his claim still fails
because he has not alleged that his medical condition was made worse by Boston's
conduct.  Nor is it likely that Plaintiff would be able to make such a showing.

---

[5] Plaintiff asserts his "weakened physical condition" was "obvious," (ECF Doc. 1 at 4) but does
not support that assertion with well-pleaded factual allegations.

Plaintiff received treatment a few hours after his encounter with Boston, which was only a minimal delay from the time sick call would have been available. Plaintiff's allegation that this delay in receiving medical treatment "potentially exacerbated his pneumonia" is too speculative to pass *Twombly* muster.  550 U.S. at 555, 570 (The complaint must include "[f]actual allegations . . . [sufficient] to raise a right to relief above the speculative level," or, "nudge[] the[] claim[] across the line from conceivable to plausible . . . ."). Because the complaint's well-pleaded factual allegations do not show Boston caused Plaintiff any injury, he cannot state an Eighth Amendment claim.  *See Baez v. Rogers*, 522 F. App'x 819, 821 (11th Cir. 2013) (holding inmate failed to state an Eighth Amendment claim in part because he failed to allege facts showing "that his inguinal hernia or entrapped nerve worsened or that he suffered any permanent harm due to [the defendant's] conduct"); *Milton v. Turner*, 445 F. App'x 159, 162 (11th Cir. 2011) (inmate failed to state Eighth Amendment claim because he "did not allege that any delay in treating [his low blood sugar] worsened his condition[,]" "failed to allege that the defendants' alleged indifference to his low blood sugar caused any injury[,]" and "[a]t most, . . . alleged that he was afraid something would happen to him"); *see also Easley v. Dep't of Corr.*, 590 F. App'x 860, 869 (11th Cir. 2014) ("[A]n inmate who complains that delay in medical treatment rose to a constitutional violation must place verifying

medical evidence in the record to establish the detrimental effect of delay in medical

treatment to succeed.") (citation and quotation omitted).

Boston's conduct in ignoring Plaintiff's subjective complaints of illness,

which resulted in a minimal delay in Plaintiff receiving treatment with no alleged

effect on his condition, was not "so grossly incompetent, inadequate, or excessive as

to shock the conscience or be intolerable to fundamental fairness." *Rogers v. Evans*,

792 F.2d 1052, 1058 (11th Cir. 1986) (citation omitted).   Plaintiff's Eighth

Amendment deprivation of medical care claim, therefore, should be dismissed.[6]

> ### D.    42 U.S.C. § 1983

Plaintiff alleges Defendant Boston "violated Plaintiff's civil rights under 42

U.S.C. § 1983." ECF Doc. 1 at 10.  Plaintiff cannot bring a claim pursuant to § 1983

because: (1) it is not a source of substantive rights, *Booth v. City of Roswell*, 754 F.

App'x 834, 837 (11th Cir. 2018) (Section "1983 is not itself a source of substantive

rights, but merely provides a method for vindicating federal rights elsewhere

conferred.") (citation omitted); and (2) Boston was a federal, not state, employee,

---

[6] Boston also asserts she is entitled to qualified immunity. ECF Doc. 45 at 14-16.  Because Plaintiff has not stated an Eighth Amendment claim, an independent discussion of qualified immunity is not warranted. *See Morris v. Town of Lexington Ala.*, 748 F.3d 1316, 1322 (11th Cir. 2014) ("[T]o survive a motion to dismiss, [a plaintiff] must satisfy the two-pronged qualified-immunity standard: (1) the facts alleged in his complaint constitute a violation of his constitutional rights, and (2) the constitutional rights were 'clearly established' when the defendant committed the act complained of.  A qualified-immunity inquiry can begin with either prong; neither is antecedent to the other.") (citations omitted).

Case No. 3:18cv1390-MCR-HTC

*Campbell v. Amax Coal Co.*, 610 F.2d 701, 702 (10th Cir. 1979) (Section 1983 "does not apply to federal officers acting under color of federal law.").

IV.   Conclusion

Accordingly, it is respectfully RECOMMENDED:

1.    That Defendant Boston's Motion to Dismiss (ECF Doc. 45) be GRANTED.

2.    That Plaintiff's claims against Defendant Boston be DISMISSED WITH PREJUDICE.

At Pensacola, Florida, this 30th day of May, 2019.


*/s/ Hope Thai Cannon*
**HOPE THAI CANNON**
**UNITED STATES MAGISTRATE JUDGE**


NOTICE TO THE PARTIES

Objections to these proposed findings and recommendations may be filed within 14 days after being served a copy thereof. Any different deadline that may appear on the electronic docket is for the Court's internal use only and does not control. A copy of objections shall be served upon the Magistrate Judge and all other parties. A party failing to object to a Magistrate Judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions. *See* 11th Cir. R. 3-1; 28 U.S.C. § 636.

Case No. 3:18cv1390-MCR-HTC