UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

HECTOR BRUNO,

     Plaintiff,

v.                               Case No. 3:18cv1390-MCR-HTC

UNITED STATES OF
AMERICA, et al.,

     Defendants.
_____/

## REPORT AND RECOMMENDATION

This matter is before the Court on the parties' respective motions for summary judgment.  ECF Docs. 61, 64.  The parties have been afforded a full opportunity to respond to the motions and to file supplemental responses.  ECF Docs. 67, 69, 74, 76, 79.  After reviewing the parties' submissions, the record, and the relevant law, the undersigned recommends that Plaintiff's motion (ECF Doc. 61) be DENIED and Defendant's motion (ECF Doc. 64) be GRANTED.

## I.    INTRODUCTION

Plaintiff Hector Bruno, proceeding *pro se* and *in forma pauperis*, initiated this action under the Federal Tort Claims Act ("FTCA") and *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,* 403 U.S. 388 (1791).  ECF Doc. 1. Bruno named two defendants:  Lt. R. Boston and the United States of America

("USA").  Lt. Boston was an employee of The Federal Prison Camp in Pensacola, Florida ("FPC Pensacola") at the time of the subject incident.  On June 28, 2019, the Court dismissed the *Bivens* claims against Lt. Boston.  ECF Doc. 50, report and recommendation adopted by ECF Doc. 53.  Thus, the only remaining claims are Plaintiff's negligence claim and constitutional claims against USA.

Plaintiff alleges Defendant USA (through the Federal Bureau of Prisons ("BOP")) was negligent in failing to provide him with medical care while he was incarcerated at FPC Pensacola on September 11 and 12, 2017, after he reported being ill.[1]  Plaintiff was diagnosed with pneumonia on September 13, 2017, after being transferred to the Santa Rosa County Jail ("SRCJ").  Plaintiff further alleges Defendant USA violated his First, Fourth and Eighth Amendment rights by transferring him to different facilities after the incident in retaliation for his complaints of illness.

Defendant USA moves for summary judgment on the negligence claim based on two grounds.  First, USA argues Plaintiff's claim is barred by the discretionary function exception to liability under the FTCA, and thus this Court lacks subject matter jurisdiction over Plaintiff's claim.  Second, USA argues Plaintiff fails to present evidence to establish all elements of a common law negligence claim.

---

[1] Plaintiff was an inmate of the BOP when he filed this action on June 4, 2018.  The events giving rise to the action occurred at FPC Pensacola.  He was subsequently released from BOP custody on July 19, 2019.

Defendant USA also moves for summary judgment on Plaintiff's constitutional claims, and Plaintiff does not disagree that those claims are barred by the doctrine of sovereign immunity.  Indeed, in Plaintiff's opposition, he "concedes that he cannot prevail on constitutional claims . . . or deliberate indifference claims" and that "he must prevail, if at all, on his claim for negligence or other wrongful act by a federal employee, under the [FTCA]."  ECF Doc. 69 at 4-5 (internal citations omitted).

Plaintiff moves for summary judgment on his negligence claim.  In his two-page motion, Plaintiff states that "[t]he negligence is so obvious that a lay person can infer [it] without the guidance of expert testimony."  ECF Doc. 61 at 1.  Plaintiff relies on his medical records, incident report, and subsequent retaliation.[2]  *Id.*

## II.   LEGAL STANDARD

Defendant USA has moved for dismissal of the negligence claim under both Federal Rules 12(b)(1) and 56.  As to Rule 12(b)(1), Defendant USA argues that the Court lacks subject matter jurisdiction over Plaintiff's negligence claim because it is barred by the discretionary function exception.  However, the Eleventh Circuit has "cautioned that the district court should only rely on Rule 12(b)(1) if the facts necessary to sustain jurisdiction do not implicate the merits of plaintiff's cause of

---

[2] Although Plaintiff relied on his medical records, none were provided as part of his motion for summary judgment.  Thus, the Court provided Plaintiff with an opportunity to supplement his motion (ECF Doc. 71), which he did (ECF Doc. 74).

action." *Douglas v. United States*, 814 F.3d 1268, 1275 (11ᵗʰ Cir. 2016).  Otherwise, the "proper course of action for the district court . . . is to find jurisdiction exists and deal with the objection as a direct attack on plaintiff's case."  *Id.* (citing *Morrison v. Amway Corp.*, 323 F.3d 920, 925 (11ᵗʰ Cir. 2003) and quoting *Garcia v Copenhaver, Bell & Assocs.*, 104 F.3d 1256, 1261 (11ᵗʰ Cir. 1957)).  Thus, the undersigned will address the merits of Plaintiff's negligence claim under the standards set forth for deciding motions for summary judgment under Rule 56.

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  An issue of fact is "material" if it might affect the outcome of the case under the governing law, and it is "genuine" if the record taken as a whole could lead a rational fact finder to find for the nonmoving party.  *Id.*  Summary judgment is not appropriate "if a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact."  *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 594 (11ᵗʰ Cir. 1995).  Generally, the Court must view the facts

in the light most favorable to the non-moving party and draw all reasonable inferences in favor of that party. *Mann v. Taser Int'l, Inc*., 588 F.3d 1291, 1303 (11th Cir. 2009).

## III.   UNDISPUTED FACTS

The undisputed facts pertinent to the resolution of the parties' motions for summary judgment are drawn from the Plaintiff's verified complaint[3] (ECF Doc. 1), Defendant USA's answer to the complaint (ECF Doc. 41), Plaintiff's Motion for Summary Judgment (ECF Doc. 61), Defendant USA's Motion to Dismiss the Complaint Or, In The Alternative, Motion for Summary Judgment (ECF Doc. 64), Defendant's opposition (ECF Doc. 67), Plaintiff's opposition (ECF Doc. 69), and the parties' supplemental briefings (ECF Docs. 74, 76). Nevertheless, matters stated below as "facts" for purposes of summary judgment review may not be the actual facts. *See Montoute v. Carr*, 114 F.3d 181, 182 (11th Cir. 1997).

On September 11, 2017, Plaintiff told officials at FPC Pensacola he was ill and needed medical treatment. Plaintiff was experiencing respiratory distress, high fever, nausea, vomiting, and physical weakness. Plaintiff was advised that a

---

[3] *See Sammons v. Taylor*, 967 F.2d 1533, 1545 n.5 (11th Cir. 1992) ("[F]acts alleged in [a prisoner's] sworn pleading are sufficient and… a separate affidavit is not necessary."); *Perry v. Thompson*, 786 F.2d 1093, 1095 (11th Cir. 1986) (holding specific facts pled in a sworn complaint must be considered in opposition to a motion for summary judgment).

lieutenant or medical personnel would come to check on him in his living quarters, but no one came to check on Plaintiff that evening.

On September 12, 2017, Plaintiff continued to experience the same symptoms of respiratory distress, high fever, nausea, vomiting, and physical weakness. He reported to sick call at 6:00 AM, but Health Services was not scheduled to open until 8:00 AM. Plaintiff returned to his living quarters to rest until the 8:00 AM sick call. At approximately 6:40 AM, Plaintiff was awakened and informed that he was to report to the "bus barn" for Work Call.[4]

Plaintiff went to the bus barn. Plaintiff told Lt. Boston, who was the lieutenant in charge of Work Call, that he was ill. Lt. Boston nonetheless ordered Plaintiff to get on the bus and go to work and advised him to go to sick call when he returned from work. As stated in the Report and Recommendation on Lt. Boston's motion to dismiss, although Plaintiff alleges he suffered from a "weakened physical condition" that was "obvious", Plaintiff does not allege he exhibited any physical manifestations of an illness when he told Lt. Boston he was sick. He does contend, however, that he told Lt. Boston "he was violently ill, in graphic detail." ECF Doc.

---

[4] FPC Pensacola is a minimum-security work duty camp. All inmates are required to participate in Work Call as scheduled by the camp's personnel. The lieutenant in charge of Work Call determines whether to excuse an inmate from Work Call or remove an inmate from the Work Call area.

69 at 3.  Specifically, he told Lt. Boston he was "sick," had "been throwing up," "had diarrhea," and felt "weak," "dehydrated" and "weird."  ECF Doc. 69 at 8-9.

Despite Lt. Boston's instructions, Plaintiff refused to get on the work bus. After some further discussion, Lt. Boston asked another employee to remove Plaintiff from the Work Call area and place Plaintiff in a cell or holding room nearby. Next, Lt. Boston (or another FPC Pensacola employee) prepared an incident report charging Plaintiff with refusing to work and refusing to obey an order.[5]

Plaintiff was then transferred to SRCJ, where he was examined by medical personnel and diagnosed with pneumonia.  Defendant states that FPC Pensacola contracts with SRCJ to provide services, including, when necessary, medical care and treatment to inmates of FPC Pensacola, and suggests that Plaintiff was sent to SRCJ for medical treatment.  Plaintiff, on the other hand, points out that SRCJ is used by FPC Pensacola as a special housing unit ("SHU") where prisoners are sent for disciplinary reasons and that he was being sent to SRCJ for disciplinary reasons.

Plaintiff states he was in the cell "until perhaps 11:00 AM or thereabouts." ECF Doc. 69 at 3.  Based on the medical records, Plaintiff was examined at 12:59 PM by medical personnel at SRCJ.  At that time, he had a temperature of 101.8. ECF Doc. 74, Exhibit B.  The records indicate that Plaintiff's respirations were "even

---

[5] The September 12, 2017 incident report was subsequently dismissed and expunged from Plaintiff's prison record.

and unlabored," that his "lung sounds clear in all lobes," and that he exhibited "normal gait and station." *Id.* at Exhibit C. The records also note "faint exp wheezing" in the "right upper and middle lobe." *Id.* After an x-ray was taken of his chest the following day, September 13, Plaintiff was diagnosed with pneumonia. *Id.* at Exhibit E.

## IV.    PLAINTIFF'S NEGLIGENCE CLAIM

As stated above, Plaintiff's negligence claim arises out of events occurring on September 11 and 12, 2017. First, Plaintiff claims USA was negligent in providing him with medical care because no prison official checked in on him after he reported being ill on September 11. Second, he seeks to hold USA liable for Lt. Boston's decision to send Plaintiff to SRCJ the following morning, rather than send him back to his cell to await sick call. If that decision involved Lt. Boston's exercise of a discretionary function and did not violate a specific law, policy, rule or regulation, then Plaintiff cannot recover against USA. Alternatively, regardless of whether the decision involved an exercise of a discretionary function, if Plaintiff cannot show that the BOP's failure to provide him with medical treatment on September 11 or 12 caused or worsened his pneumonia, he cannot recover.

### A. <u>Discretionary Function Exception</u>

Defendant USA argues Plaintiff's negligence claim is barred by the discretionary function exception to the FTCA. Under this exception, liability under

the FTCA is precluded if it is "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a). The exception "marks the boundary between Congress' willingness to impose tort liability upon the United States and its desire to protect certain governmental activities from exposure to suit by private individuals." *Cohen v. United States*, 151 F.3d 1338, 1340 (quoting *United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines)*, 467 U.S. 797, 808 (1984)). "By fashioning an exception for discretionary governmental functions . . . Congress took steps to protect the Government from liability that would seriously handicap efficient government operations." *Varig Airlines,* 467 U.S. at 814 (citations and internal quotations omitted).

Exceptions to the FTCA are "strictly construed in favor of the United States." *Zelaya v. United States*, 781 F.3d 1315, 1322 (11th Cir. 2015) (quoting *JBP Acquisitions, LP v. United States ex rel. F.D.I.C.*, 224 F.3d 1260, 1263 (11th Cir. 2000)). Thus, "even the negligent performance of a discretionary function does not subject the government to liability under the [FTCA]." *Red Lake Band of Chippewa Indians v. United States,* 800 F.2d 1187, 1194 (D.C. Cir. 1986).

To determine when the discretionary function exception applies, this Court applies a two-part test. *See United States v. Gaubert*, 499 U.S. 315, 322–23 (1991)

(citations omitted); *see also Ochran v. United States*, 117 F.3d 495, 499 (11th Cir. 1997). First, the court must "consider the nature of the conduct and determine whether it involves 'an element of judgment or choice.'" *Douglas,* 814 F.3d at 1274 (quoting *Gaubert*, 499 U.S. at 322). "Government conduct does not involve an element of judgment or choice, and thus is not discretionary, if 'a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow, because the employee has no rightful option but to adhere to the directive.'" *Ochran*, 117 F.3d at 499 (quoting *Gaubert*, 499 U.S. at 322); *see also Cohen*, 151 F.3d at 1341. Thus, if the "challenged act or omission violated a mandatory regulation or policy that allowed no judgment or choice," the discretionary function exception does not apply. *Autery v. United States*, 992 F.2d 1523, 1526 (11th Cir. 1993).

"Second, if the conduct at issue involves the exercise of a judgment, [the Court] must determine whether that judgment is grounded in considerations of public policy." *Douglas,* 814 F.3d at 1273. "The discretionary function exception is intended to prevent the courts from 'second-guessing'... administrative decisions grounded in social, economic, or political policy, through the medium of an action in tort.'" *U.S. Aviation Underwriters Inc. v. United States*, 562 F.3d 1297, 1299 (quoting *Gaubert*, 499 U.S. at 322, 325). In making its determination, a court should "not focus on the subjective intent of the government employee or inquire whether

the employee actually weighed social, economic, and political policy considerations before acting." *Ochran*, 117 F.3d at 500. Instead, it should "focus on the nature of the actions taken and on whether they are susceptible to policy analysis." *Gaubert*, 499 U.S. at 325.

Applying the two-part test to the facts of this case, the undersigned finds that Lt. Boston's decision to transfer Plaintiff to SRCJ when he refused to go to work was discretionary, did not violate a proscribed course of conduct, and is the type of decision that the Court should not second-guess.

### 1. Lt. Boston's decision to remove Plaintiff from Work Call and transfer him to SRCJ involved an exercise of judgment.

Defendant submitted a Declaration from Warden Michelle Joseph, the Warden at FPC Pensacola, in support of its motion. According to Warden Joseph, when an inmate claims that he is sick and requests to be excused from Work Call, the decision whether to excuse an inmate is left to the discretion of the lieutenant in charge. ECF Doc. 64-1 at 2-3. Warden Joseph further states that there are no laws, policies, rules or regulations governing the procedure by which the lieutenant must make that decision. *Id.* at 3. Plaintiff has not presented any evidence or stated any facts to dispute Warden Joseph's testimony.

Instead, Plaintiff argues "[c]learly established federal law, decisions, and policies provide that inmates have a legal right to adequate medical care," which Defendant deprived him of on September 11 and 12. ECF Doc. 69 at 6. Although

the BOP has a general duty to "provide for the safekeeping, care, and subsistence" of all federal prisoners under 18 U.S.C. § 4042(a)(2), that general duty is discretionary. *See Cohen*, 151 F.3d at 1343. In *Cohen*, the Eleventh Circuit specifically held that § 4042 "does not set forth any required nondiscretionary actions" and does not impose "a non-discretionary duty of care on the BOP which removes this case from the discretionary function exception." *Id.* Rather, "the BOP retains sufficient discretion in the means it may use to fulfill that duty to trigger the discretionary function exception." *Id.*; *see also, Keahl v. United States*, 2017 WL 1017811 *5 (N.D. Fla. Feb. 17, 2017) (citing *Cohen* for the position that § 4042 provides a general duty of care that is discretionary). Thus, Plaintiff's reliance on the BOP's general duty is insufficient to meet Plaintiff's burden of establishing that the discretionary function exception does not apply.

**2. Plaintiff has failed to show Defendant violated any mandatory federal law, decision or policy.**

To remove Lt. Boston's conduct from the discretionary function exception, Plaintiff must identify some federal law, decision, or policy that "direct[s] the manner by which the BOP must fulfill [that] duty" and which "sets forth… particular conduct the BOP personnel should engage in or avoid while attempting to fulfill their duty[.]" *Id.* (citations and quotations omitted). A policy is non-discretionary only when it sets forth *specific details* indicating the manner in which a duty must be accomplished. *See, e.g., Enlow v. United States*, 161 F. App'x. 837, 840 (11th

Cir. 2006) (holding that, "[i]n the absence of a clear mandate requiring" a specific course of action, the BOP maintains discretion in transferring prisoners, even where the prisoner is subsequently harmed as a result).

In support of his negligence claim, Plaintiff points to one program statement and three (3) standards, which he contends impose certain mandatory actions by USA and which were violated by Lt. Boston or the BOP.[6]  A review of the program statement and standards, along with the facts and evidence presented, however, do not support that conclusion.

In his complaint, Plaintiff argues Lt. Boston violated BOP Employee Standards of Conduct prohibiting prison staff from "[g]iving an inmate an order that could be hazardous to health and safety."  BOP Program Statement 3420.11 at 25. As with § 4042, this Program Statement merely sets forth a mandatory general duty; it does not specifically define prohibited conduct.  Thus, prison officials retain discretion in determining when and under what conditions an order may be hazardous to the health and safety of a prisoner.  *See Carpenter v. Bragg*, 2015 WL 13734632 *11 (D.S.C. Nov. 30, 2015) (holding that a BOP Program Statement 3420.11 provision stating "it is mandatory that employees respond immediately,

---

[6] Defendant USA argues the standards are not law, but at most incorporated into BOP Policy.  ECF Doc. 76 at 6.  Although a violation of the standard does not equate to a violation of federal law, the program statement and standards are relevant here because "[w]here Congress has granted an agency discretion in implementing a regulatory statute, the agency's promulgation of regulations or guidelines describing how it will use that discretion is protected by the discretionary function exception."  *Id.* at 1344 (citing *Gaubert,* 499 U.S. at 323).

effectively, and appropriately during all emergency situations" was discretionary, as employees had discretion in determining how to fulfill that mandatory duty).

In other words, Program Statement 3420.11 leaves "ample room for judgment" of prison staff in making decisions. *See Cohen*, 151 F.3d at 1343. To find otherwise would subject USA to litigation for virtually *all* orders made by prison officials any time a prisoner was inadvertently harmed within BOP care. *See id.* at 1344 ("Under [Plaintiff's] theory, anytime a prisoner is injured by another prisoner, he can bring an action claiming that the BOP was negligent in classifying the prisoner who committed the assault and placing him in the institution at which the attack occurred, or in not removing that prisoner based upon some prior incident, or in not restricting his movement, or in not providing more guards, and so forth."). Such second-guessing would seriously handicap efficient government operations, which is precisely what the discretionary function exception was implemented to avoid. *See Varig Airlines,* 467 U.S. at 814.

In his opposition, Plaintiff argues Defendant violated Expected Practices 4-4344, 4-4346, and 4-4400 of the Standards for Adult Correctional Institutions promulgated by the American Correctional Association. ECF Doc. 69 at 11-13. Expected Practice 4-4344 states that, "[u]pon arrival at the facility, all offenders are informed about how to access health services and the grievance system. This

information is communicated orally and in writing and is conveyed in a language that is easily understood by each offender." *Id.* at 11.

Plaintiff has failed to show the BOP violated EP 4-4344 or create a genuine issue of material fact as to whether a violation occurred. There are no facts showing, for example, that Plaintiff was not adequately informed about how to access health services when he arrived at FPC Pensacola. Rather, Plaintiff's conduct in requesting sick call and knowledge of the sick call procedures indicate he *knew* how to access health services. Indeed, the undisputed facts show that Plaintiff "reported to Health Services 'Sick Call' at 6:00 am... where a notice was posted advising inmates that 'Sick Call' for that day was scheduled for 8:00 am." ECF Doc. 1 at 3. There is further no dispute in this case that Plaintiff knew the grievance procedures at FPC Pensacola, as he utilized them in this case. Thus, a reasonable juror would not find that the BOP violated EP 4-4344.

Expected Practice 4-4346 states in relevant part, "There is a process for all offenders to initiate requests for health services on a daily basis.[] Clinical services are available to offenders in a clinical setting at least five days a week and are performed by a physician or other qualified health care professional." ECF Doc. 69 at 11. According to Defendant USA, FPC Pensacola operates a Health Services Unit Monday through Friday from 7:00 AM to 5:30 PM, as well as on weekends and federal holidays. ECF Doc. 76 at 2 (Institution Supplement Pen 6031.04B (Section

9)).  Additionally, clinical care of inmates is available from 0700 hours to 1700 hours on weekends and federal holidays.  *Id.* at 3 (Florida Ambulatory Care Policy and Procedure).

Again, Plaintiff has presented no facts or evidence to show the BOP violated EP 4-4346.  Although Plaintiff contends he was offered a "trick bag" when it came to getting medical treatment, Plaintiff acknowledges that "[s]ick call is at 8:00 AM" and that "an inmate who has to leave for work prior to 8:00 AM has to either get excused from work, or get a special medical visit at an irregular time, or simply do without medical care."  ECF Doc. 69 at 12.  Plaintiff also admits that "a special medical visit at an irregular time" is available to inmates who cannot access regular sick call hours.  ECF Doc. 69 at 12.  Thus, by Plaintiff's own admission, there was a process at FPC Pensacola for inmates to initiate health services on a daily basis and services were available five days a week.

To the extent that Plaintiff contends Lt. Boston's decision not to return Plaintiff to sick call on the morning of September 12 violated EP 4-4346, such an argument fails because, had Plaintiff gotten on the work bus that day, he would still have had an opportunity to see a medical professional after work hours.  Moreover, he received medical treatment the same day he arrived at SRCJ.  As to the failure of Plaintiff to receive medical treatment on September 11, it appears that Plaintiff did not request medical treatment until after he returned from work.  Plaintiff states in

his complaint that he was told the lieutenant in charge would check on him and did not. In his opposition, he states that he was told medical personnel would be dispatched, but they were not. However, the fact that no one checked on him on that specific day does not mean that the BOP failed to have a process in place or that clinical services were not available at the times set forth in the FPC Institution Supplement or Florida Ambulatory Care Policy and Procedure. Moreover, as will be discussed below, even if the BOP's conduct on that day violated EP 4-4346, Plaintiff still cannot show causation or damages.

Finally, Expected Practice 4-4400 states that, "[w]hen an offender is transferred to segregation, health care personnel will be informed immediately and will provide assessment and review as indicated by protocols established by the health authority." *Id.* at 13. Plaintiff alleges he was placed in a "solitary confinement cell" by Lt. Boston while she or another BOP employee prepared an incident report. ECF Doc. 69 at 3. According to the Declaration of Captain Hawley, FPC does not have any "cage-like cells" as described by Plaintiff, and Plaintiff sat on a bench in a room with a wooden door, while awaiting transfer. ECF Doc. 76-5 at 2. This dispute of fact, however, is not material to whether Defendant violated EP 4-4400.

The Florida Administrative Code defines disciplinary confinement, a form of segregation, as "a form of punishment in which inmates found guilty of committing

violations of the department rules are confined for specified periods of time to individual cells based upon authorized penalties for prohibited conduct." Fla. Admin. Code. R. 33-602.222(1)(f).  Inmates in disciplinary confinement, or segregation, are generally assigned to a special housing unit apart from the general population.  Fla. Admin. Code. R. 33-602.222(2)(b).  The Florida Ambulatory Care Policy and Procedure ("FACPP") 6031.04 provides, "The FPC does not have a [Special Housing Unit], and any inmate requiring confinement or increased security precautions will be transported to the contracted local jail."  Plaintiff does not appear to dispute this, as he acknowledges SRCJ "is used for what would ordinarily be called Special Housing Unit."  ECF Doc. 69 at 9.  Thus, Plaintiff was not placed in "segregation" until he was transferred to SRCJ and upon arriving to SRCJ, "medical personnel examined [Plaintiff] and immediately began treatment."  *Id.* at 3.

The undersigned also conducted an independent review of other BOP policies identified by Defendant, including provisions of the FACPP and Institutional Supplement PEN 6031.04, but could not identify any nondiscretionary requirements Defendant violated.  FACPP 6031.04 states that "[i]nmates who are identified by non-medical staff as requiring immediate medical… care will be reported to Health Services[,]" ECF Doc. 76, Exhibit 3 at 9, and Institutional Supplement PEN 6031.04 states that "[i]nmates who are identified as requiring immediate medical… care will be reported to medical… staff[,]."  ECF Doc. 76, Exhibit 2 at 1.  Those supplements,

however, are inapplicable because the record indicates that Lt. Boston did *not* identify Plaintiff as requiring immediate medical care. Moreover, Plaintiff's pneumonia is not the type of medical condition that PEN 6031.04 identifies as requiring immediate attention.[7] Thus, Lt. Boston's failure to seek immediate medical care on Plaintiff's behalf could not have violated these provisions.

Accordingly, the first part of the two-part discretionary function test is met. The undersigned finds that Lt. Boston's decision to transfer Plaintiff to SRCJ, rather than send him back to his cell to await sick call, was discretionary, as it involved an exercise of judgment regarding whether she believed Plaintiff was ill or was being disobedient and seeking to avoid his work obligations. Additionally, the undersigned finds that Defendant did not violate any federal statute, regulation or policy specifically prescribing a course of conduct.

### 3.    Policy Analysis

The second element of the Supreme Court's test is also satisfied in this case, as the conduct at issue is of the type discretionary function immunity is intended to protect, or susceptible to policy analysis. The Supreme Court has held that "the

---

[7] Program Statement 6031.04 ("PS 6031.04") provides five major levels of care that define care provided to inmates, including: Medically Necessary—Acute or Emergent. Medical conditions that are of an immediate, acute or emergent nature, which without care would cause rapid deterioration of the inmate's health, significant irreversible loss of function, or may be life threatening. Federal Bureau of Prisons, Program Statement 6031.04, at 5–6 (2014), http://www.bop.gov/policy/progstat/6031_004.pdf.

problems that arise in the day-to-day operation of a corrections facility are not susceptible of easy solutions." *Bell v. Wolfish*, 441 U.S. 520, 547 (1979) (citations omitted). As such, "[p]rison administrators… should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Id.* Indeed, "[d]eciding how to classify prisoners and choosing the institution in which to place them are part and parcel of the inherently policy-laden endeavor of maintaining order and preserving security within our nation's prisons." *Cohen*, 151 F.3d at 1344 (citing *Bell*, 441 U.S. at 547).

### B. <u>Common Law Negligence Claim</u>

Regardless of whether Defendant USA is protected from liability by the discretionary function exception, Plaintiff has not presented evidence sufficient to support a negligence claim arising out of the events that occurred on September 11 or 12. To state a claim for negligence in Florida, Plaintiff must show (1) a duty requiring the defendant to conform to a certain standard of conduct; (2) a breach of that duty by the defendant; (3) that the defendant's breach caused Plaintiff's resulting injury; and (4) actual loss or damage. *Clay Elec. Coop., Inc. v. Johnson*, 873 So.2d 1182, 1185 (Fla. 2004) (quoting *Prosser and Keeton on the Law of Torts* § 30, at 164-65 (W. Page Keeton ed., 5th ed. 1984)).

Defendant USA argues Plaintiff has failed to present facts or evidence to support any of the elements of his negligence claim. As to the breach of duty, Defendant USA argues Plaintiff failed to show the BOP breached its duty to him because he was provided medical treatment upon transfer to SRCJ. Indeed, USA argues "it is undisputed that Lt. Boston and Defendant did assist Plaintiff in securing medical treatment…." ECF Doc. 64 at 14. The undersigned, however, disagrees with USA on this point. Specifically, there is a dispute of material fact as to whether Plaintiff's receipt of medical treatment at SRCJ is attributable to Defendant's conduct, i.e., whether he was sent there for medical treatment or for disobeying orders. Thus, the undersigned finds that a reasonable juror could find that Defendant had a duty to Plaintiff and breached that duty.

That said, the fact that Plaintiff was examined and received treatment by at least 12:59 PM on September 12 by SRCJ precludes Plaintiff from establishing either causation or damages. With regards to causation, "plaintiffs alleging negligence in Florida must meet the more likely than not standard of causation." *Sanders v. ERP Operating Ltd. P'ship*, 157 So.3d 273, 277 (Fla. 2015) (quoting *Gooding v. Univ. Hosp. Bldg., Inc.*, 445 So.2d 1015, 1018 (Fla. 1984)). A plaintiff "must introduce evidence which affords a reasonable basis for the conclusion that it is more likely than not the conduct of the defendant was a substantial factor in bringing about the result. A mere possibility of such cause is

not enough[.]" *Id.* (internal citations omitted). "[W]hen… the probabilities are at best evenly balanced, it becomes the duty of the court to direct a verdict for the defendant." *Id.*

Although Plaintiff was diagnosed with pneumonia on September 13, after a chest x-ray was completed, he has presented no evidence to show that the BOP's conduct in either failing to check in on him on September 11, or failing to return to him to his cell to await sick call on September 12, even if a breach of duty, caused his pneumonia or made it worse.

Plaintiff states that he has provided this Court with detailed medical records and documents that demonstrate unequivocally that Defendant USA was negligent. However, those records do not support Plaintiff's claim. Nothing in the medical records suggests that it is more likely than not that Defendant's conduct was a substantial factor in bringing about Plaintiff's pneumonia or even in making it worse. *See id.* Instead, Plaintiff's medical records show that Plaintiff had a low grade fever when he arrived at SRCJ with no further physical manifestations of illness. ECF Doc. 74. His lung sounds were clear and respirations even. *Id.*

Plaintiff's conclusory allegation that Lt. Boston's conduct "was a direct and proximate cause of furthering Plaintiff's injuries" (ECF Doc. 1 at 8), alone, is

insufficient to overcome Defendant's motion for summary judgment.[8]  *See Keahl*, 2017 WL at *7 ("[T]here is no evidence from which a reasonable jury could conclude that the four-month period between initial examination and surgery somehow prevented the macular hole from closing…. Thus, on this record, Plaintiff has wholly failed to present evidence demonstrating that Defendant's delay—if any—caused her current vision problems.").  First, mere "labels and conclusions" such as this one are not accepted as true.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 680-81 (2009) (holding that conclusory allegations are not entitled to a presumption of truth); *see also Papasan v. Allain*, 478 U.S. 265, 286 (1986)) (noting courts "are not bound to accept as true a legal conclusion couched as a factual allegation").  Second, even reading the facts in the light most favorable to Plaintiff, without *any* evidence supporting a finding of causation, the Court cannot reasonably infer its existence or resolve doubt in favor of Plaintiff.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986) (to defeat summary judgment, "there must be evidence on which the jury could reasonably find for the plaintiff"); *see also Brown v. City of Clewiston*, 848 F.2d 1534, 1540 (11th Cir. 1988) (finding that the nonmovant need not be given the benefit of *every* inference, but only of every *reasonable* inference).

---

[8] In his complaint, Plaintiff states Defendant's conduct "potentially exacerbated his pneumonia." ECF Doc. 1 at 19.

## V.   PLAINTIFF'S CONSTITUTIONAL CLAIMS

As stated above, "Plaintiff concedes that he cannot prevail on constitutional claims, 42 USC 1983 claims, or deliberate indifference claims."  ECF Doc. 69 at 4. The undersigned agrees Defendant USA is entitled to summary judgment on these claims because it is (1) immune from liability for constitutional violations and (2) not a state actor under § 1983.  *See Caldwell v. Klinker*, 646 F. App'x. 842, 847 (11th Cir. 2016) (finding the United States has not waived sovereign immunity from liability for damages arising from alleged constitutional violations); *see also Dry v. United States*, 235 F.3d 1249, 1255 (10th Cir. 2000) (holding that § 1983 is "applicable only to actions by state and local entities, not by the federal government").

Despite this concession, Plaintiff spends several pages of his opposition addressing his retaliation claim.  ECF Doc. 69 at 16-19.  First, Plaintiff's retaliation claim is not cognizable under the FTCA.  *See Lopez v. United States*, 656 F. App'x 957, 966 (11th Cir. 2016) (citing *F.D.I.C. v. Meyer*, 510 U.S. 471 (1994)).  Moreover, to the extent Plaintiff seeks to recharacterize his retaliation claim as a negligence claim for the first time in his opposition, he cannot do so.  *See Colardo-Keen v. Rockdale Cnty.*, 775 F. App'x. 555, 571-572 (11th Cir. 2019) (holding that a plaintiff may not raise a new theory of relief for the first time in her opposition brief) (citing

*Hurlbert v. St. Mary's Health Care System, Inc.*, 439 F.3d 1286, 1297 (11th Cir. 2006)).

## VI.    PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

For the reasons set forth above, the undersigned also finds that Plaintiff's motion for summary judgment on his negligence claim should be denied.

## VII.    CONCLUSION

Accordingly, it is respectfully RECOMMENDED:

1.    That Plaintiff's Motion for Summary Judgment (ECF Doc. 61) be DENIED.

2.    That Defendant's Motion to Dismiss the Complaint Or, In The Alternative, Motion for Summary Judgment (ECF Doc. 64) be GRANTED.

3.    That the clerk be directed to enter judgment in favor of Defendant and close the file.

At Pensacola, Florida, this 5th day of December, 2019.

*s/ Hope Thai Cannon*
**HOPE THAI CANNON**
**UNITED STATES MAGISTRATE JUDGE**

<u>NOTICE TO THE PARTIES</u>

Objections to these proposed findings and recommendations may be filed within 14 days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the Court's internal use only and does not control.</u>  A copy of objections shall be served upon the Magistrate Judge and all other parties. A party failing to object to a Magistrate Judge's findings or recommendations

contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions. *See* 11th Cir. R. 3-1; 28 U.S.C. § 636.